GULF, COLORADO AND SANTA FE RAILWAY CO. v. J. M. RICHARDS.

No. 825.

1. **Pleading—Amendment—New Cause of Action.**

An amended petition changing the form and manner of plaintiff's pleadings, but alleging as the basis for recovery the same facts stated in the original petition, does not set up a new cause of action.

2. **Railway Company—Right of Way—Manner of Constructing Road.**

A railway company is not limited to that plan of constructing its road that would inflict the least injury upon the land-owner, but may, provided the work is done in a careful and skillful manner, construct upon any suitable plan it may select, without thereby incurring damages in addition to those assessed in the condemnation proceedings, or embraced in a deed conveying to it the right of way.

3. **Same—Right to Use Additional Land.**

A right-of-way deed conveyed a strip 100 feet wide across the grantor's land, "with the right to use such additional land as may be necessary for the construction and maintenance of the roadbed," and of taking and using "water and stone therefrom." Held, that this did not include the right to permanently appropriate, cut timber from, and excavate and remove soil from, a strip 250 to 300 feet wide.

4. **Written Contract—Parol Evidence Varying.**

Where a right-of-way deed contains no stipulations as to the manner in which the railroad shall be constructed, parol evidence is not admissible to show that the railway company, in procuring the deed, falsely represented to the grantor that the road would be constructed so as not to injure the land by excavations and embankments, and that trestles would be used so that egress and ingress would not be cut off.

5. **Amendment—New Cause of Action.**

An amendment merely claiming additional damages by reason of an injury alleged in the original petition, though it enlarges the scope of the recovery prayed for, does not set up a new cause of action.

6. **Damages to Land—Sickness of Family.**

In an action for damages to land, resulting from the construction of a railroad across it, sickness in plaintiff's family, caused by stagnant pools of water formed near his house in the construction of the road, is a pertinent fact in showing the amount of damage to the property.

APPEAL from Dallas.   Tried below before Hon. R. E. BURKE.

*Leake, Henry & Reeves,* for appellant.—1.  The cause of action as set up in the second count of said first amended original petition is an action ex delicto for the wrongful and negligent acts of defendant independent of a contract, and the same is a new and independent cause of action and is barred by limitation.  Railway v. Pape, 73 Texas, 501; Shirley v. Railway, 78 Texas, 144; McLane v. Belvin, 47 Texas, 493.

2.  The owner who conveys for a valuable consideration the right of way over his land will be presumed to have included in the consideration therefor compensation for all damages he might probably suffer from the construction of the road over his land; and the railway company would be entitled to construct its road on an embankment if it is in compliance with the general plan and the requirements of a safe and good road, although the embankment might injure his premises by cutting off ingress to and egress therefrom, and which would have been avoided had the road been constructed on a trestle.  Railway v. Pape, 62 Texas, 313;

Railway v. Rowland, 70 Texas, 303; Pierce on Railways, secs. 216, 174; Mills on Eminent Domain, sec. 216.

*George H. Plowman* and *H. G. Robertson,* for appellee.—1. The cause of action as set out in the original petition was based upon alleged acts of negligence in the construction of the railroad through appellee's land, and the taking of land and material and the cutting of timber outside of the right of way, not necessary to the proper construction of the road. The allegations of fraud and misrepresentation in procuring the deed were matters of inducement only, or a basis for recovering exemplary damages, which were claimed, and it was not a change of the cause of action to omit them from the amended petition and to rely on the acts of injury charged in the original petition. Lee v. Boutwell, 44 Texas, 151; Landa v. Obert, 78 Texas, 33; Seaby v. Sweatt, 28 Texas, 20.

2. Setting out new items of damages growing out of alleged acts of negligence, or enlarging or particularizing the circumstances connected with the transaction out of which the damages arose, is not setting up a new cause of action. Railway v. Pape, 73 Texas, 502.

3. A reasonable construction of the grant under such a deed conveying the right of way 100 feet wide and such additional land as might be necessary for the construction and maintenance of the road bed, would only embrace occasional and unimportant excesses, such as might be shown necessary in the construction and maintenance of the road in the usual and proper manner, and would not be construed to authorize the appropriation of 240 feet of plaintiff's land.

FINLEY, ASSOCIATE JUSTICE.—This action was instituted in the District Court of Dallas County, by J. M. Richards, October 5, 1886, for damages resulting to his premises by the construction of appellant's line of road over his land, consisting in the destruction of a number of pecan trees by appellant's agents at the time of the construction of the road, damages to his land from flooding same, caused by insufficient sewers in the embankment of his land, constructed by appellant for its road; cutting off ingress to and egress from his premises by the construction of said embankment; damages to his premises by digging holes in his land from which to obtain material to construct said embankment, and permitting water to accumulate and stagnate thereon.

On May 28, 1889, appellee filed an amended petition, which contained two counts. On September 11, 1893, appellant filed an amended answer, which, in addition to other defenses, contained special demurrers to such amended petition. Appellant's demurrers to the whole of the first count of said amended petition were sustained. Appellant specially demurred to the whole of the second count of said amended petition, because it was a new and independent cause of action, and was barred by limitation, which demurrer was by the court overruled.

The cause was tried on September 13, 1893, and a verdict rendered for appellee, from which this appeal is prosecuted.

Appellant's first assignment of error, which is presented also as a proposition, is as follows: "Said defendant excepts to the whole of the second count of plaintiff's amended original petition, because plaintiff's cause of action as set up in his original petition was based upon an alleged express contract between plaintiff and defendant; said contract being partly in parol and partly written, the action as therein set up being for damages for the breach of said contract. The cause of action as set up in the second count of said first amended original petition is an action ex delicto for the wrongful and negligent acts of defendant independent of a contract, and the same is a new and independent cause of action and is barred by limitation."

The original petition, formal parts omitted, contains these allegations: "That heretofore, to-wit, on the ——— day of February, 1886, plaintiff was lawfully seized and possessed of a tract of land of one hundred and sixty-four acres, situated in Dallas County, Texas. (Description.)

"Plaintiff states, that on, to-wit, the ——— day of February, 1886, defendant by its authorized agents, for the purpose of securing the right of way for its railway through plaintiff's lands aforesaid, represented to plaintiff that if plaintiff would let defendant have right of way through his lands 100 feet wide, that defendant would carefully and properly construct its road over same (said 100 feet right of way), and would not injure plaintiff nor plaintiff's lands, but would enhance the value of plaintiff's home and lands outside of said right of way, and would give plaintiff a contract with defendant for furnishing ties for its road, by which plaintiff could and should make large profits out of same, and in addition thereto would pay plaintiff one hundred and twenty-five dollars. Plaintiff says that relying upon said representations and promises of defendant he conveyed to defendant a right of way through his said lands 100 feet wide, but that said defendant has failed and refused to comply with its agreement with plaintiff.

"That said representations to plaintiff were false and fraudulent, and falsely and fraudulently made to plaintiff for the purpose of deceiving him, and that plaintiff believed said representations and promises of defendant and relied upon same and was deceived thereby.

"That defendant drafted and presented to plaintiff a deed to said right of way 100 feet wide, and falsely and fraudulently, and for the purpose of deceiving and injuring plaintiff, omitted the terms of said agreement aforesaid from said instrument granting right of way, save and except the consideration in part, viz., the $125. That the defendant has never complied with its said agreements, save and except in the payment of said $125. That defendant did not carefully and properly construct its said road over said right of way so as not to injure plaintiff, but negligently, carelessly, and wrongfully constructed same, and did injure and greatly depreciate plaintiff's home and lands adjoining said right of way. That the lands described herein constituted the home of plaintiff and his

family, and the lands are rich and fertile for farming purposes. That on said date, to-wit, the ——— day of February, 1886, defendant wrongfully and unlawfully, and without consent of plaintiff, and without complying with its contract with plaintiff, embraced in said right of way, and comprising, to-wit, three acres of land. That said right of way runs in a short distance of the residence of plaintiff, viz., in ——— feet of same.

"Plaintiff further states, that said defendant wrongfully, unlawfully, and unnecessarily, on, to-wit, the ——— day of February, 1886, entered upon said premises of plaintiff outside of said right of way, and in disregard of the rights and protests of plaintiff then made to defendant, wrongfully, illegally, and unnecessarily, and in disregard of defendant's promises and plaintiff's rights, seized and took from plaintiff, to-wit, eight acres of land. That said land was near to and right at the door of plaintiff, and was indispensable to the uses and enjoyment of plaintiff's home, and was to him and his family invaluable.

"That defendant entered upon same un_wfully, wrongfully, and unnecessarily as aforesaid, and carelessly, negligently, and unnecessarily dug ditches and holes and removed the earth therefrom and made excavations, and left large holes right at and near plaintiff's residence and in twenty-five feet of plaintiff's door on said land, into which water flowed and stood and stagnated, and which became disease-breeding and polluted pools by which plaintiff's family were made sick, and rendered their home unpleasant and almost uninhabitable.

"That said defendant on said date last aforesaid also trespassed upon plaintiff's premises, and wrongfully, unnecessarily and illegally cut down his shade trees and timber in his lot and right at the door of his residence, and within a few feet of his very threshold. That defendant cut and destroyed, to-wit, 100 valuable trees near plaintiff's home, of the value each of $10.

"That on plaintiff's land there were many large pecan trees, many of which were fruit bearing trees. That defendant wrongfully, unlawfully, and in disregard of the protests of plaintiff, cut and destroyed a large lot and number of said valuable trees, to-wit, 100 trees, of the value each of $25.

"That said defendant, on, to-wit, said ——— day of ———, 1886, wrongfully and unlawfully broke down plaintiff's fences and cut and dug through plaintiff's yard in a few feet of plaintiff's house.

"Plaintiff further states, that there were natural channels for the flow of water over plaintiff's land, and defendant, in disregard of its obligations to plaintiff, wrongfully, carelessly, and negligently did construct its road by making fills and cuts and throwing up earth, and did so construct its said road as to and did obstruct the natural channels and flow of water and caused same to dam up and overflow and destroy and render valueless a large number of acres of plaintiff's land, to-wit, twenty acres.

"That by reason of said wrongs, injuries, and trespasses aforesaid, plaintiff has suffered and sustained damages, to-wit, $3500.

"Plaintiff further states, that the said lands described herein is the home of plaintiff and his family, and that the wrongs, injuries, and trespasses set forth in the preceding count, which are here adopted and made a part thereof as fully as if here reiterated, were willfully, wrongfully, unlawfully, and maliciously committed by said defendant in a wanton and malicious manner, and in utter disregard of plaintiff's protests and rights, and to plaintiff's damage $3000. Premises considered, plaintiff prays that defendant be cited to answer this petition, and that he have judgment for his damages actual and exemplary, and costs of suit and general relief."

The second count of the amended petition here brought in question by the exception, makes the following allegations: "And plaintiff would further show in his second count of his petition, that by the terms of said deed for right of way, a copy of which is hereto attached and made a part hereof, the defendant only acquired by said contract the right of way over said land 100 feet wide, and was bound to construct said road skillfully and properly, and in such manner as to do no unnecessary damage to plaintiff's premises and property, and defendant was not entitled to use any of plaintiff's land outside of said 100 feet right of way, except such as might be found necessary for the proper construction and maintenance of its roadbed.

"That a proper construction of said road over said land would have required a trestle instead of an embankment, in elevating same to the necessary grade.

"That if an embankment was consistent with proper methods of construction, that a trestle was equally so, and to save plaintiff unnecessary damage, should have been adopted in this instance.

"That if said embankment was proper and consistent with approved methods of railroad building, the same should have been carefully done, and the earth and material used in the construction of same procured from adjacent cuts on defendant's line of road, or elsewhere, as herein after shown.

"That, notwithstanding the premises, and defendant's duty to construct said railroad over said land skillfully, carefully, and properly, as aforesaid, the same was in fact done negligently and carelessly, to plaintiff's great damage.

"That said defendant negligently and carelessly constructed a large embankment, about twenty feet high and seventy-five feet wide, the entire length of said line of road through plaintiff's premises. That the same was so constructed as to entirely destroy ingress and egress to plaintiff's home and improvements.

"That in constructing said road, instead of using the soil from adjacent cuts made in grading said road, which would have been amply sufficient for the purpose, and in accordance with the requirements of careful and skillful railroad building, whereby the earth on plaintiff's land outside

of the 100 feet right of way would not have been interfered with, and no damage done plaintiff's premises except that resulting from the existence of said embankment, which (with proper drainage and waterways) would have been inconsiderable, the defendant, without any authority under its contract with plaintiff, and without his consent, made large and deep excavations on plaintiff's bottom land and other lands near said right of way, and without authority and without plaintiff's consent took and used the earth therefrom in the construction of said embankment.

"That said excavations so dug on plaintiff's land were left in such condition as to leave no outlet for water accumulating and stagnating therein. That large and filthy pools of stagnant water are formed and stagnating near plaintiff's residence, from which arise poisonous vapors, rendering his home unhealthy and unfit to reside upon with his family.

"That said embankment over said right of way is so negligently constructed, with insufficient waterways, and the earth so torn up with said excavations, and the flow of water so interrupted and changed from its natural flow, as to cause large quantities of land belonging to plaintiff to be overflowed and rendered worthless for agricultural or other purposes. That by reason of the premises and the negligent and unlawful acts of defendant aforesaid, plaintiff's premises have been greatly and permanently injured and depreciated in value, and he has been damaged in the sum of $2000.

"That plaintiff had growing on said premises near said line of railroad a large quantity of valuable timber, shade trees and pecan trees of great value, and the defendant herein, without authority, but under pretense of authority derived from said deed or conveyance of the right of way, entered upon plaintiff's land and cut down and destroyed large quantities of said timber, shade trees and pecan trees, thereby greatly injuring plaintiff, to his further damage $1000.

"That upon and under like pretended authority, but without authority in fact, defendant negligently and carelessly threw down plaintiff's fences inclosing his cultivated lands near said line of railway, and left the same down, and negligently and carelessly left his crops growing in said enclosure open to the depredation of cattle and other animals running at large, whereby a large part of his crops were trampled down and destroyed, to his further damage $500."

A careful inspection of the pleadings discloses that the facts alleged in the amended petition as a basis of recovery of damages were substantially alleged in plaintiff's original petition as grounds of recovery. More and different facts were alleged originally, but the same facts alleged in the amendment are also to be found charged in the original petition. Damages were sought on account of a negligent and improper construction, cutting of trees, etc., in the first pleading, and the same ground is set out in the pleading under consideration. The arrangement of the allegations in the first petition are not very orderly and distinct. Damages for breach of contract and for tort are both therein alleged.

Under our practice, if the facts alleged show a breach of contract, and acts amounting to a tort, all damages recoverable therefor under either of the forms of action, ex contractu or ex delicto, may be recovered in the one suit. Stuart v. Telegraph Co., 66 Texas, 581-6. We can not determine whether a new cause of action has been set up in an amendment by merely ascertaining the forms of action as they exist at common law, disclosed in each of the pleadings. The common law is not in force with us upon this subject; our practice is to state the facts, and if they authorize a recovery under any or all the forms of action, and whether in law or equity, the pleading will be treated as sufficient. The true test, in determining whether a new cause of action is pleaded, is, are the facts relied upon to sustain a recovery alleged in both the old and new pleadings? If this inquiry can be answered in the affirmative, no new cause of action is set up. If, however, the amended pleadings disclose a different state of fact upon which the suit is based, then it should be treated as a new cause of action. Lee v. Boutwell, 44 Texas, 151; Landa v. Obert, 78 Texas, 33; Scoby v. Sweatt, 28 Texas, 713. The court did not err in overruling the exception.

The second assignment of error raises the same question as to a particular allegation, and is not well taken, for the same reasons just announced in the consideration of the first assignment.

Third assignment of error: "The court erred in declining to give the first and third special charges requested by appellant, viz.: First Special Charge.—With reference to the claim of plaintiff for damages for cutting off egress and ingress from and to his home by the construction of the railway embankment, you are charged that the deed from plaintiff, J. M. Richards, and his wife, to defendant railroad company, conveyed to said defendant the right of way through and over such parts of plaintiff's land as might be deemed by said company most convenient.

. " 'This instrument authorized said defendant to construct its road along such a line over plaintiff's land as it might see proper, and plaintiff is not entitled to recover any damages by reason of said embankment cutting off egress from and ingress to his premises.'

"Third Special Charge.—'The railroad company was authorized to construct its road on a trestle or embankment, as it seemed proper, and in so far as plaintiff's petition seeks to recover damages for cutting off plaintiff's egress from and ingress to his premises, you are instructed to find for the defendant.' "

The legal proposition propounded under this assignment is this: "The owner who conveys for a valuable consideration the right of way over his land will be presumed to have included in the consideration therefor compensation for all damages he might probably suffer from the construction of the road over his land; and the railway company would be entitled to construct its road on an embankment if it is in compliance with the general plan and the requirements of a safe and good road, although the embankment might injure his premises by cutting off

ingress to and egress therefrom, and which would have been avoided had the road been constructed on a trestle."

"Damages resulting from increased difficulty of communication between the parts of a severed tract are such damages as are construed to be included in the assessment of damages sustained by the owner of the land in proceedings for condemning the land to the railroad's use for its right of way. See Pierce on Railroads, 174, and authorities there cited; also Mills on Em. Domain, sec. 216." Railway v. Pape, 62 Texas, 315; 73 Texas, 502.

. In the same case it is held, that the railway company is not under obligation to construct its road with the least possible inconvenience and injury to the person through whose land the railroad runs. The railway company is required to construct its road in a careful and skillful manner; and will be held liable for any damages unnecessarily inflicted upon the owner of the land through negligence and unskillful construction, notwithstanding the right of way has been previously condemned by judicial proceedings or acquired by voluntary conveyance upon valuable consideration. One who grants the right of way by deed, without special stipulations as to the manner of construction, has exactly the same rights as to the matter of ingress and egress, as he would possess were the right of way judicially condemned. Railway v. Rowland, 70 Texas, 302, 303. We think it quite clear from the authorities, and upon reason, that the railroad company is not limited to that plan of construction which would inflict the least inconvenience and injury upon the land owner; but that it may construct the railroad upon plans of its own selection, so that it is suitable for the purpose intended and is addition to such as are assessed in condemnation proceedings or embraced in a grant by deed.

The charge of the court did not give this principle to the jury; and they may have understood from the charge, that although the embankment was a proper and suitable one in plan of construction for the purposes of the railroad, and was carefully and skillfully constructed, still if they believed that the plan of trestling would have answered the same purpose, and would have been of less inconvenience and injury to the plaintiff, that the railroad company would be liable for the consequences of the embankment. The special charges asked are not so framed as to meet our approval; but they sufficiently directed the attention of the court to the point to have elicited a correct charge upon that feature of the case, and it was error in the court to omit a correct charge on the subject. We have carefully analyzed the evidence to see if this error was material, and we find ourselves unable to say that it is apparent from the record that it was harmless.

It is entirely clear from the evidence that plaintiff was entitled to a verdict for damages, indeed no other verdict would have been justified done in a careful and skillful manner, without incurring damages in by the evidence. But we can not say he was unquestionably entitled to the amount awarded by the verdict, excluding the element of damage

here in question. This being the condition of the record, we must treat the error as material.

Fourth assignment of error: "The court erred in the following paragraph of its charge and in declining to give the second and fourth special charges requested by defendant. The charge given is as follows: 'If you find and believe from the evidence that the defendant in the construction of its roadbed over plaintiff's land in a reasonable and proper manner, found it necessary to use additional ground, other than said right of way, and in so doing took no more than was reasonably necessary under all the circumstances at the time, then no recovery can be had by plaintiff under the issue presented by him, claiming damages for land taken and appropriated outside of the right of way, or for' pecan trees growing thereon; but if you believe from the evidence that in the construction of its road, the defendant did use ground other than that embraced in the right of way, 100 feet wide over plaintiff's land, and you further find and believe that the taking and using of this land was not necessary for the proper construction of its roadbed at the time, then and in that event the plaintiff would be entitled to recover the reasonable value at the time of the land so actually and unnecessarily taken and used, as well as the value of the pecan trees cut down and destroyed on this additional land."

"The second special charge is as follows: 'The deed from plaintiff and his wife to defendant conveyed to defendant the right of way 100 feet wide through and over such parts of plaintiff's land as might be deemed by said company most convenient, with the right to use such additional land as might be necessary for the construction and maintenance of its roadbed.'

"The deed from plaintiff and wife, in addition to the right of way. 100 feet wide over their land, conveyed to defendant the right to use such additional land as might be necessary for the construction and maintenance of its roadbed.

"If you find from the evidence that defendant went outside of its 100 feet right of way, and dug holes in plaintiff's land for the purpose of obtaining soil to construct an embankment on which to lay and put down its railroad, and that such soil and earth was necessary in order to make said embankment, and could not with safety to said embankment have been obtained from said right of way, then under the terms and provisions of said deed, plaintiff could not recover damages occasioned to said land by the digging of said holes and making such excavation thereon."

The fourth special charge is as follows: "If you believe from the evidence that the defendant did not take from plaintiff's land a greater quantity of soil than was reasonably sufficient to construct the embankment for its road, then you will find against plaintiff on his claim for damages for the excavation made by defendant on said land."

Under this assignment this proposition is urged: "A deed from the owner conveying to the railway company the right of way over his land

with the right to use such additional land as might be necessary for the construction and maintenance of its roadbed, would authorize the railway to take from the owner's land outside of the right of way soil with which to construct an embankment for its roadbed, if said soil could not with safety to the embankment be taken from the right of way, and no greater quantity be taken than is reasonably sufficient therefor."

This assignment involves a construction of the deed conveying the right of way. The deed recites a conveyance of the "right of way 100 feet wide through and over such parts of said land as may be deemed by said company most convenient, with the right to use such additional land as may be necessary for the construction and maintenance of its roadbed, and with the full and perfect right to construct and locate and repair and forever maintain its said road and telegraph lines over the above described land, and to take and use water and stone therefrom."

"As in the case of all contracts, the intent of the parties to the deed, when it can be obtained from the instrument, will prevail, unless counteracted by some rule of law. * * * The rule is, that the intention of the parties is to be plainly ascertained by considering all the provisions of the deed, as well as the situation of the parties, and then give effect to such intention, if practicable, when not contrary to law." 2 Devlin on Deeds, sec. 836. "Manifestly no general rule can be laid down as to the construction of particular words. The primary object courts have in view is to carry out the intention of the parties." Ib. sec. 864.

Where the deed describes the land conveyed by metes and bounds, the mention of the quantity conveyed will usually be treated as a part of the description and will not have controlling effect. In such case, a slight variance in quantity will be treated as unimportant. No relief will be afforded either party on account of excess or deficiency, unless the difference is of such magnitude as to show mistake or fraud. Ib. sec. 1044. If, however, the language of the deed clearly expresses the intention to convey only a certain quantity, or if the description is uncertain without the aid of the statement of quantity, the amount of land then named in the grant becomes important and essential Ib. sec. 1045.

Keeping in view these general principles, let us see what was conveyed by the deed in question. A strip of land 100 feet wide is granted as a right of way for a railroad, through a tract of land containing 164 acres. The entire tract is described by metes and bounds, while the 100-feet strip is to be taken "through and over such parts of said land as may be deemed by said company most convenient." The land absolutely conveyed by the grant is described alone by quantity;— it is a 100-feet strip through a larger tract of land. If there were no additional or qualifying words in the grant, there could be no question that only a strip of 100 feet was intended to pass by the conveyance. But it is

contended that the additional words, "with the right to use such additional land as may be necessary for the construction and maintenance of its roadbed," authorized the appropriation of any quantity of land in addition to the 100-feet strip, which was found to be necessary for the construction and maintenance of the roadbed. What is the fair import of the language—"with the right to use such additional land as may be necessary," etc.? Does this clause give the right to permanent appropriation or absolute dominion over such land as might be found necessary for the construction and maintenance of the roadbed of the railroad, in addition to the 100-feet strip? Under this deed, the railroad company cut a strip through the land from 250 to 300 feet wide; cut down the trees thereon; dug great excavations and removed the dirt therefrom, and built an embankment 75 or 80 feet wide at the base, and ranging from 15 to 20 feet high. It assumed absolute dominion, and practically appropriated a strip from 250 to 300 feet wide, claiming the right to do so under that clause in the grant just quoted. Under the contention of the railway company, the extent of its right to take land of appellee under the deed is limited only by its necessities. Is this the reasonable construction to be placed upon the language of the deed? Following the clause in question, is this further provision: "and with full and perfect right to construct and locate and repair and forever maintain its said road and telegraph lines over the above described land, and to take and use water and stone therefrom." The purpose of the conveyance was to grant a right of way for the railroad, and the amount of land purchased for that object was a strip 100 feet wide through the entire tract. To make effectual the conveyance of this right of way, the railroad was given the right to use additional land, when necessary to the construction and maintenance of the railroad, and to take and use water and stone therefrom. It is clear to our mind that it was not the intention of the parties to the grant, that the railroad should take as much land as its necessities might require; nor that it should have the privilege of cutting the timber and making excavations upon the grantor's land outside of the 100-feet strip. It was authorized to take water and stone outside of the 100-feet strip, and to use outside land when necessary in the construction and maintenance of the road. The grant of the privilege to use other land can not reasonably be construed to mean the right to permanently appropriate, to cut the timber therefrom, nor to make excavations and remove the soil therefrom. By the term "use" was meant the exercise of such reasonable privileges over and limited occupancy of the additional land as might be practically required in the work of the construction or maintenance of the railroad upon the 100-feet strip conveyed. Beyond the taking of water and stone, and such use as above indicated, the railroad company had no right to go, under the deed, and it is liable for the timber cut and damage done to the land by excavations outside of the 100-feet strip. The charge of the court was too favorable to appellant on this feature of the case, and appellant's proposition can not be sustained.

Appellee has filed cross-assignments of error, which we will now consider. His pleading, to which the trial judge sustained a demurrer, alleged that appellant, in procuring the deed to the right of way, falsely and fraudulently represented to him that the railroad would be constructed through his land in such a manner as not to damage the land by excavations or embankments; that where elevation of the roadbed was required, trestling would be used so that ingress and egress would not be cut off, etc. He alleged that he was ignorant as to the manner of constructing railroads, and relied on these representations in making the grant, etc. The trial judge sustained a demurrer based upon the proposition, that such parol declarations and agreements made previous to or cotemporaneous with the execution of the deed, could not control the terms of the deed.

It is well settled that parol evidence may be introduced to show a different consideration from that recited in the deed. This is upon the principle that the deed need not recite a consideration; the law imports the consideration, and the recitation is therefore only a receipt, which is mere prima facie evidence, and may be explained and varied by parol evidence. 2 Devlin on Deeds, sec. 830. In the same section it is said: "Another principle and one more universal than the former in its application, is that wherever a right is vested or created or extinguished by contract or otherwise, and writing is employed for the purpose, parol testimony is inadmissible to alter or contradict the legal and common sense construction of the instrument. * * * A party is estopped by his deed. He is not permitted to contradict it; so far as the deed is intended to pass a right or to be the exclusive evidence of a contract, it concludes the parties to it."

The instrument here in question furnishes the exclusive evidence of the intention of the parties as to the rights passed by it. It conveys the right of way, 100 feet wide, through a tract of land of 164 acres, and the right to construct a railroad over and upon that right of way. The import, which a legal construction gives the writing, impresses the further provision, that the grantee has the right to choose the plan or method of constructing the railroad, provided the plan or method is suitable and adapted to the purpose intended, and the work is carefully and skillfully executed. A parol agreement made before or at the time of the execution of the deed can not have the effect to destroy this right passed by the deed. Express Co. v. Fuller, 4 Texas Civ. Apps., 213. Railway v. Pape, 62 Texas, 315. This assignment can not be sustained.

Appellee, as his second cross-assignment, says the court erred in sustaining defendant's ninth special exception to the second count of plaintiff's petition, which exception is as follows: "To so much of second count claiming that defendant threw down his fences enclosing his cultivated land, and permitted the cattle to destroy his crops, because the same is new and independent matter, and is barred by limitation, and neither the value of such crops nor the extent of the injury thereto is alleged."

In plaintiff's original petition, with many other wrongs and injuries alleged, this language is used,—"That said defendant on to-wit, the —— day of ——, 1886, wrongfully broke down plaintiff's fences and cut and dug through plaintiff's yard in a few feet of plaintiff's house, etc." In the second count of plaintiff's amended petition, stricken out on demurrer, he charges: "That upon and under like pretended authority, but without authority in fact, defendant carelessly and negligently threw down plaintiff's fences inclosing his cultivated lands near said line of railway and left the same down, and negligently and carelessly left his crop growing in said enclosure open to the depredations of cattle and other animals running at large, whereby part of his crop was trampled down and destroyed, to his further damage five hundred dollars."

In Railway v. Pape, 73 Texas, 502, it is said: "The exception to so much of the amended petition as claimed damages for the injury to plaintiff's crops by reason of the alleged inundation of 10 acres of land on the west side of the railroad, we think was properly overruled.

"Damages for the overflow of this land was claimed in the original petition. This amendment merely claims additional damages by reason of an alleged injury to plaintiff's crops, and though it enlarges the scope of the recovery prayed for, it does not set up in that particular a new cause of action."

The court should not have stricken out this part of the pleading.

Third cross-assignment: Plaintiff alleged, "that large and filthy pools of stagnant water are formed and stagnated near plaintiff's residence, from which arise poisonous vapors, rendering his home unhealthy and unfit to reside upon with his family."

The court excluded these matters from the jury, and in the general charge said: "You will not consider any testimony relating to the sickness in plaintiff's family, and should you find a verdict for plaintiff, no recovery can be had on this ground."

These facts, as alleged, were pertinent to the inquiry as to the amount of damage to the property, and should not have been excluded from the jury.

Before another trial of the case, the parties should replead and clearly present the issues involved, in the light of this opinion.

The judgment of the court below is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered June 29, 1895.