**WHALEY et al. v. LEMMON et al.** (No. 2597.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 27, 1926. Rehearing Denied March 3, 1926.)

1. **Boundaries** ⬦⇒3(5)—**Particular description of land conveyed by county by metes and bounds according to surveyor's field notes held to control as against general description.**

Particular description of land conveyed by county by metes and bounds according to field notes of surveyor *held* to control over general description that conveyance was of certain leagues granted by state to county for public school purposes.

2. **Adverse possession** ⬦⇒73—**Patents by state of scrap school land, previously patented to county for educational purposes, held not to constitute color of title, within statute of limitation (Const. art. 7, § 6).**

In view of Const. art. 7, § 6, patents of scrap school land, which had previously been patented to county for educational purposes, *held* not to constitute color of title, within meaning of statute of three years' limitation.

3. **Trespass to try title** ⬦⇒40(1)—**Exclusion of deed conveying land in controversy for valuable consideration to plaintiffs in trespass to try title held erroneous.**

In trespass to try title, where county had not previously conveyed land patented to it by state for educational purposes, exclusion from evidence of order of commissioner's court and deed conveying such land for valuable consideration to plaintiffs *held* erroneous.

4. **Trespass to try title** ⬦⇒44.

Conflicting evidence as to true boundary of land conveyed by county to plaintiffs in trespass to try title *held* for jury.

5. **Appeal and error** ⬦⇒519 — **Maps cannot be considered by appellate court, where they were not included in statement of facts signed by attorneys and approved by judge.**

Agreement of attorneys, authorizing maps attached thereto to be considered by appellate court, *held* not to authorize consideration of maps, where they were not included in statement of facts signed by attorneys and approved by trial judge.

Appeal from District Court, Hockley County; Clark M. Mullican, Judge.

Two suits in trespass to try title by J. C. Whaley and another against G. W. Lemmon and against J. L. Hankins and another were consolidated. Judgments for defendants, and plaintiffs appeal. Reversed and remanded.

Bean & Klett and Robt. H. Bean, all of Lubbock, for appellants.

Vickers & Campbell and W. H. Bledsoe, all of Lubbock, for appellees.

JACKSON, J. J. C. Whaley and Mrs. Laura Josephine Jones, an unmarried woman, plaintiffs, brought suit in trespass to try title in the district court of Hockley county, Tex., against Geo. W. Lemmon to recover a strip of land alleged by them to constitute a portion of the extreme southern part of league 22 in Hockley county, Tex. Plaintiff also instituted a similar suit in the same court against J. L. and Emma Hankins to recover a strip of land alleged by them to constitute a different portion of the extreme southern part of league 22 and the extreme southern part of league 23. They alleged that leagues 22 and 23 were McCulloch county school land, and that they are the owners thereof, subject to the lien of McCulloch county to secure the payment of a balance of the purchase price.

J. L. and Emma Hankins answered that they were the owners of surveys Nos. 1, 2, 3, 4, 5, and 6 in block 1 in Hockley county, lying immediately south of league 23, and south of part of league 22, and that the strip of

land which plaintiffs sought to recover against them was a part of, and included in, their said surveys.

Geo. W. Lemmon answered that he was the owner of surveys Nos. 7, 8, 9, 10, and 11 in block 1 in Hockley county, lying immediately south of league 22, and that the strip of land involved in the suit against him was a part of, and included in, his said surveys.

The defendants in each suit pleaded general denial, not guilty, agreed boundary, and acquiescence therein, estoppel, and the statutes of 3, 5, and 10 years limitations.

By agreement the cases were consolidated and tried together before a jury, and at the conclusion of the evidence, the trial court peremptorily instructed a verdict for the defendants, who are appellees, and entered judgment against the plaintiffs, who are appellants.

[1] The first assignment challenges, as error, the action of the trial court in directing a verdict against appellants, because, under the pleading and the evidence, there were issues of fact which they were entitled to have determined by a jury.

It was agreed that appellants are the owners of leagues Nos. 22 and 23 of the McCulloch county school land, subject to the lien retained by McCulloch county to secure the payment of a balance of the purchase money, and subject to the defenses pleaded by the appellees, and that the appellees J. L. and Emma Hankins are the owners of surveys Nos. 1, 2, 3, 4, 5, and 6 in block 1; and appellee Lemmon is the owner of surveys Nos. 7, 8, 9, 10, 11, and 12 in block 1, unless the respective titles of the defendants to some part of said surveys are defeated by the questions involved in this litigation.

The record discloses that plaintiff's land, leagues 22 and 23, were McCulloch county school land, and patented in 1884; that the lands of appellees', surveys 1 to 11, involved in the controversy were scrap school land, first surveyed in March, 1902, resurveyed in March, 1917, and patents issued thereto on April 17, 1917. That the south boundary line of leagues 22 and 23 is the north boundary line of surveys 1 to 11, and the strip in controversy lies south of the line which appellees contend is the south boundary line of leagues 22 and 23, and north of the line which appellants contend is the north boundary line of surveys 1 to 11. The strip in controversy is approximately 29 varas in width at the east end, and approximately 89 varas in width at the west end, and includes approximately 100 acres.

That in 1911 McCulloch county caused its four leagues of school land, which included leagues 22 and 23, to be resurveyed and platted by D. M. Lowrance, and these leagues were thereby sectionized and subdivided into sections and fractional sections. In this resurvey an iron pipe was placed at the corners of each tract of the subdivision, and an iron pipe was placed at what the surveyor adopted as the southwest corner of league 23, and at the corners of each tract of the subdivision, which had for its south line the south boundary line of leagues 22 and 23. That in 1913 McCulloch county sold its four leagues of land to C. H. Capps, and the commissioners' court, in its order for the sale and conveyance thereof, directed that the plat made by D. M. Lowrance sectionizing the leagues be acknowledged by the county judge as the county's plat of the subdivision of the leagues, and it, together with the field notes of Mr. Lowrance of said subdivisions, be placed of record in the deed records of McCulloch and Hockley counties, Tex.

The deed by which the county conveyed the leagues to C. H. Capps in pursuance of the order of the commissioners' court contains the order adopting the plat and field notes of the subdivision made by Lowrance; recites that they are recorded in the deed records of McCulloch and Hockley counties; and refers to them in aid of the description of the lands conveyed.

The deed contains a general description, which reads:

"Situated in Hockley county, Tex., and known as the four leagues of land granted by the state of Texas to McCulloch county for public free school purposes; said leagues being numbered 21, 22, 23 and 24, by virtue of patent numbers 176, 177, 178, and 179, in volume 24, dated May 3, 1884, and recorded respectively in volume 1, on pages 39, 40, 42, and 44 of the deed records of Hockley county, in the office of the county clerk of Baylor county, Tex., to which county Hockley was on September 5, 1885, attached for registration purposes, and to which patents reference is here made as a part of this conveyance, and which said four leagues of land have been surveyed, platted, and sectionalized as follows, to wit."

The conveyance then particularly describes each section or tract of the subdivision by metes and bounds, according to the field notes made by Mr. Lowrance, which call for the iron pipes placed by him at the corners of each section or tract of the subdivision, and for the pipes placed by him at the corners of the sections and tracts of the subdivision, which have for their south boundary the line he adopted as the south boundary line of leagues 22 and 23. The deed conveyed the tracts or sections of the subdivision separately, and retained a separate lien against each tract or section to secure the payment of the purchase money against such section or tract only, and the notes stipulate they are secured by a vendor's lien on land described, "according to the map, plat, and dedication thereof, and the subdivisions thereof as surveyed by D. M. Lowrance."

By deed of date December 1, 1916, C. H. Capps conveyed said four leagues of land to the appellants herein, and, after the description by section and league, continues:

"According to the field notes thereof which were made by D. M. Lowrance, surveyor, on September 15, 1911, in accordance with a resolution and order of the commissioners court of McCulloch county, made and entered December 8, 1913, recorded in the minutes of said court in minute book 6, page 110, to which reference is here made."

The strip of land in controversy lies south of what we will designate as the "Lowrance line," which is marked by the iron pipes still to be found on the ground at the corners of each section and fractional section, which has for the south line the line Mr. Lowrance adopted as the south boundary line of leagues 22 and 23 in subdividing the leagues into tracts or sections.

The appellants contend that this strip was not conveyed by McCulloch county to C. H. Capps because the general description in the deed must yield to the particular description giving the metes and bounds of each section or tract of the subdivision according to the Lowrance field notes which call for the iron pipes along the Lowrance line, and hence the land conveyed is limited to this specific description. Appellees reply that the whole deed construed together makes it obvious that the county intended to convey to Capps all the land in the leagues.

There is no dispute as to the land covered by the particular description, and it is manifest that the strip in controversy is not included in the metes and bounds of the specific description contained in the deed.

The question here involved as to the controlling effect of a general or specific description of land conveyed in a deed is passed upon in the case of Cullers v. Platt, 16 S. W. 1003, 81 Tex. 258; the court saying:

"Will the general description in the deed to Collins calling for all the land in the survey except that embraced in the homestead control the particular description by metes and bounds which omits the land lying between the east line of the Tyson survey and the east line of the homestead tract, the same that is now in controversy?"

After a brief discussion, the court continues:

"But the rule is that where there is a repugnance between a general and a particular description in a deed the latter will control (2 Dev. on Deeds, § 1039), although whenever it is possible the real intent must be gathered from the whole description, including the general as well as the particular. Where a grantor conveys specifically by metes and bounds, so there can be no controversy about what land is included and really conveyed, a general description as of all of a certain tract conveyed to him by another person, * * * cannot control, for there is a specific and particular description about which there can be no mistake and no necessity for invoking the aid of the general description."

"A general description may be looked to in aid of a particular description that is defective or doubtful, but not to control or override a particular description about which there can be no doubt. There can be no doubt about what land Purinton conveyed to Collins, whatever he may have intended to convey, and·it is entirely unnecessary to look to the general reference that it was all the balance of the Tyson survey, which might be true or not true without affecting the parcels really conveyed."

In Boggess et al. v. Allen et al. (Tex. Civ. App.) 56 S. W. 195, the court says:

"A proper construction of the Douglass deed applies it to, and makes it convey, the land in controversy. Although it describes the land purporting to be conveyed as of the Huddlestone and Carraher tracts, it subsequently refers to and embodies the plat in the deed as a more specific and definite description of the land. By comparison, the former description, as part of the Huddlestone survey, is general, and the boundary clearly indicated on the map was particular, and therefore the former must yield to the latter."

In the case of McFaddin et al. v. Johnson (Tex. Civ. App.) 180 S. W. 306, the court says:

"In the construction of an instrument, where there is a particular description by metes and bounds, and there is a repugnance between the particular description in the deed and a general description, it has been held that where a grantor conveys specifically by metes and bounds, so that there can be no controversy about what land is included, and really conveyed, a general description cannot control. A general description may be looked to in aid of a particular description that is defective or doubtful, but not to control or override a particular description, about which there can be no doubt. There can be no doubt about what land appellee conveyed to appellants, whatever he may have intended to convey."

See, also, Stark et al. v. Brown et al. (Tex. Civ. App.) 210 S. W. 811, and Standefer v. Miller (Tex. Civ. App.) 182 S. W. 1149. These decisions are decisive, and sustain appellants' contention. Hence we hold that the deed from McCulloch county to C. H. Capps did not convey the strip of land, lying south of the "Lowrance line," involved in this litigation; and, therefore, if the strip in controversy constitutes a part of leagues 22 and 23, according to the true boundaries the title to the strip remained in McCulloch county until legally conveyed.

[2] The leagues were patented to McCulloch county in 1884, to be held by it as a trust for the benefit of the public schools in said county. The surveys owned by appellees were scrap school land, surveyed and awarded in 1902, resurveyed in March, 1917, and patented April 17, 1917.

The state having patented the leagues to the county for educational purposes in 1884, the lands included within their true boundaries were no longer subject to sale, award, or patent by the state, and, if in the awards of· the surveys now owned by appellees, in 1902,

and in the patents issued thereon in 1917, any part of said leagues were included, neither the awards nor the patents constituted title or color of title within the meaning of the statute of three-year limitation, because, if to any extent the awards and patents to said surveys conflicted with the boundaries of said leagues to such extent, the state officials were without authority to make the awards or issue the patents. Allen et al. v. Draper et al. (Tex. Com. App.) 254 S. W. 783, and authorities cited.

So long as the title to said leagues remained in the county, appellees could not acquire title to any part thereof under their pleas of limitation. Article 7, section 6, of the Constitution of this state, provides, in part, that—

"All lands heretofore or hereafter granted to the several counties of this state for educational purposes, are of right the property of said counties respectively, to which they were granted, and title thereto is vested in said counties; and no adverse possession or limitation shall ever be available against the title of any county."

See Lamar County v. Talley (Tex. Civ. App.) 127 S. W. 272, affirmed by the Supreme Court, 137 S. W. 1125, 104 Tex. 295; Delta County v. Blackburn, 93 S. W. 419, 100 Tex. 51; Colorado County. v. Travis County et al. (Tex. Civ. App.) 176 S. W. 845.

[3] Appellants present as error the action of the trial court in excluding an order of the commissioners court of McCulloch county dated February 10, 1925, and a deed dated February 20, 1925, executed in compliance with said order, by which order and deed the strip of land in controversy was for a valuable consideration conveyed to appellants, appellees objecting to the admission of said instruments because at the time of their execution and delivery McCulloch county was not the owner or holder of any interest in leagues 22 and 23 other than the superior title reserved to secure the payment of the purchase money, as all the title of said county to the land in controversy had been conveyed to C. H. Capps by the deed executed in 1913. In excluding this order of the commissioners' court and the deed of the county to the appellants the court committed error, for the reason that the title to the land in controversy, if included in the true boundaries of the leagues, was not conveyed in the deed from the county to Capps made in 1913.

[4] The evidence is conflicting as to the true location of the south boundary line of leagues 22 and 23, and presented an issue of fact which should have been submitted to the jury.

What we have said disposes of the other issues presented, for, if we are correct in holding that the title to the strip of land in controversy, if a part of the leagues, was not conveyed by the county in its deed to Capps

in 1913, appellees' defenses of agreed boundary, estoppel, and limitation do not defeat appellants' title. If said strip is not a part of said leagues, appellants did not allege a cause of action.

[5] We find among the papers in the case this agreement:

"We, the undersigned attorneys representing all parties to these suits, agree that the maps hereto attached may be filed in the Court of Civil Appeals along with the statement of facts in said cases, and may be considered a part of the record; they having been introduced in evidence on the trial thereof."

This agreement is signed by the attorneys, but neither it nor the maps attached are in the statement of facts signed by the attorneys and approved by the trial judge. The maps therefore attached to this agreement cannot be considered by this court for any purpose. E. P. Norwood et al. v. W. D. McMillan, 278 S. W. 331, decided by this court. These maps, however, if a part of the statement of facts, would not affect our conclusion.

For the errors discussed, the judgment is reversed and the cause remanded.